————o————

THE ST. JOSEPH FIRE & MARINE INSURANCE Co., Appellant, *vs.* GEORGE M. HAUCK, *et als.*, Respondents.

1. *Insurance— Fire and Marine—Companies organized under act of* 1855, *may, under act of* 1869, *loan money on personal security.*—Where fire and marine insurance companies were organized under the statute of 1855, and so authorized to loan money on personal security (Gen. Stat. 1865, p. 354), they retain that power under art. 3 of the act of March 10th, 1869. (Wagn. Stat., p. 759, see §§ 6, 15, 23 & 46.)

*Appeal from Buchanan Circuit Court.*

*Willard P. Hall*, for Appellant.

I. Plaintiff having been organized under Ch. 67 of the gene ral statutes, had the right to loan money on personal security. (See Gen. Stat. 1865, p. 345, § 1.)

II. The act of 1869 does not prohibit insurance companies from loaning money on personal security. These companies have the right, when the statute does not prohibit it, to invest their idle capital in stocks, or to loan it on personal or other security.

The act of 1869 not only does not prohibit this, but it sanctions it. (Sess. Acts 1869, p. 54, § 23, p. 61, § 46 ; Brice, *ultra vires*, p. 67, § 2 ; Ang. & Ames Corp. §§ 156–158, 257 ; 3 Sanf. Chy. 339, 347 ; 3 Comst. 473 ; 21 Mo. 91 ; 5 Wis. 181 ; 9 Mass. 423.)

III. Section 40, of the act of 1869, when construed with § 46 of the same act, means only this : That existing corporations shall be

subject to those provisions of this act which place insurance companies under the supervision of the superintendent of insurance, and which are intended to protect, in an especial manner, the public from dishonest and insolvent corporations.

IV. If it had been the intention of the legislature to limit the saving in § 46, of rights of existing corporations, to what are technically termed vested rights, it would have used the term " vested rights," in that section as in § 40.

*H. E. Barnard*, for Appellant.

I. Plaintiff's loan upon the note sued on, even were it discount, as an investment was within the powers conferred upon plaintiff by the act under which it was organized. (Gen. Stat. 1865, § 1, p. 354 ; White's Bank vs. Toledo Ins. Co., 12 Ohio St. 601.)

II. The act of 1869 does not attempt to take away or impair the rights or powers conferred by the statute of 1865. (Wagn. Stat. p. 778, § 46.)

III. The statute of 1865 constituted a contract on the part of this State with the plaintiff, which cannot be impaired by subsequent legislation. (Cool. Const. Limitations, 279 ; Dartmouth College Case, 4 Wheat. 518 ; Allen vs. McKean, 1 Sumn. 276.)

IV. Charters or acts of incorporation are merely directory unless they expressly avoid all security taken, other than that prescribed, and although neglect to take the security prescribed may be culpable on the part of the officers of the company, the security taken can be enforced against him who gave it. (Bank of U. S. vs. Dandridge, 12 Wheat. 64 ; Ang. and Ames Corp., 8 Ed., 234, § 254, and authorities cited in note, Dental Vulcanite Co. vs. Wetherbee, 2 Cliff. 555 ; S. C. 3 Fish. 87.)

V. The act approved March 10, 1869, does not grant to defendants sued by corporations organized thereunder, even the right to plead a violation of the charters of said corporations in defense; and this right not being granted, violations of the charters of corporations organized thereunder can never be ques-

tioned except by the State. (Martindale vs. K. C., St. J. & C. B. R. R. Co., 60 Mo. 510 ; Bank of Mo. vs. Mer. Bank of Baltimore, 10 Mo. 123 ; Silver Lake Bank vs. North, 4 Johns. Ch. 370 ; Keyser vs. Trustees of Brenner, 16 Mo. 88.)

*W. H. Sherman*, for Respondents.

The act of 1865, under which plaintiff was created and exercised its powers, was subject to repeal, (Const. 1865, Art. VIII, § 4,) and was repealed by the act of 1869, (Wagn. Stat., p. 759, §§ 1, 15, 16, 23, 38, 40, 46,) as to plaintiff's right to loan on personal security, both because the latter statute was inconsistent with the former, and because of repeal in positive and specific terms. Properly understood, the proviso of § 23 did not continue insurance companies in the powers and privileges conferred by the act of 1865. It preserved their corporate existence from a sweeping general repeal, it protected rights already accrued, but stripped them of all inconsistent powers and privileges. (Potter Dwar., p. 160.)

The power or privilege to loan money on personal security was not a vested right, but repealable at legislative pleasure, and properly the subject of State regulation and control.

An incorporated company has no powers except such as are specially granted, and those necessary to carry into effect the powers so granted. (N. Y. Fireman Ins. Co. vs. Ely, 5 Conn. 567 ; N. Y. Fireman's Ins. Co. vs. Ely, 2 Cow. 678, 700 ; Dawes vs. N. R. Ins. Co., 7 Cow. 462 ; Life and Fire Ins. Co. vs. Mechanic's Fire Ins. Co., 7 Wend. 31 ; People vs. Utica Ins. Co., 15 Johns. 383 ; Head and Amory vs. Providence Ins. Co., 2 Cranch, 127 ; Dartmouth College vs. Woodward, 4 Wheat. 636 ; Boughton vs. Manchester Water Works Co., 3 Barn. and Ald. 1; Stark vs. Highgate Archw. Co., 5 Taunt. 792 ; see also Wagn. Stat., ch. 37, § 6, p. 290 ; Bissell vs. M. S. & N. I. R. R. Cos., 22 N. Y. 288.)

A specific grant of certain powers is an implied prohibition of the exercise of other and distinct powers. (N. Y. Fireman Ins. Co. vs. Ely, 5 Conn. 567 ; People vs. Utica Ins. Co., 15 Johns. 383 ; N. Y. Fireman's Ins. Co. vs. Ely, 2 Cow. 699 ; No. River Ins.

Co. vs. Lawrence, 3 Wend. 483 ; Farmers' and Traders' Bank vs. Harrison, 57 Mo. 506 ; McCulloch vs. Ross, 5 Den. 580 ; Beaty vs. Knowles, 4 Pet. 169 ; 3 B. & Ald. 9, 12 ; Head vs. Providence Ins. Co., 2 Cranch, 127 ; Hart vs. Mo. St. Mutual F. & M. Ins. Co., 21 Mo. 92 ; Farmers' and Traders' Bank vs. Harrison, 57 Mo. 506 ; Bank of Chillicothe vs. Swayme, 8 Ohio, 257 ; N. Y. Fireman's Ins. Co. vs. Ely, 2 Cow., 700–710 ; Savage C. J., Beach vs. Fulton Bank, 3 Wend. 582; Life & Fire Ins. Co. vs. Mech. Fire Ins. Co., 7 Wend. 35 ; Baron Parke, in S. Yorkshire Ry. vs. Gr. No. Ry. Co., 9 Exchequer, 55.)

Whether a mode of performance be prohibited expressly or by implication the rule is the same. The act is *ultra vires* and void, and no suit based upon such act can be maintained by the corporation. (Bissell vs. M. S. & U. I. R. R. Co.'s *supra.*) Tested by these rules, plaintiff had no power or authority since the Insurance law of 1869, to loan its capital or funds on personal security or discount of notes.

Loaning money on notes by a corporation, whether the notes are taken as security or "on discount," is an exercise of banking powers. (5 Conn. 573 ; 13 Conn. 249 ; 8 Wheat. 350–1 ; 3 Bos. & P. 158 ; 6 Term, 699 ; 2 Cow. 699 ; 19 Johns. 1.)

To banks, alone, of all the classes of corporations mentioned and provided for in Ch. 37, Wagn. Stat., is expressly given the power to loan money on personal security. Whenever that chapter gives to any other class of corporations the power to loan money, the nature or kind of security to be taken for the loan is named " in the same breath." Hence, under the principles above referred to, the loaning of corporate funds on personal security must be restricted solely to corporations which by law are authorized to exercise banking powers and privileges.

The principle that a violation of its charter is no defense to an action by a corporation, does not prevent the defense that the contract of a corporation is unauthorized by its charter. (Hart vs. Mo. St. Mu. F. & M. Ins. Co., 21 Mo. 92)

Under § 15, of the act of 1869, insurance companies may lend money on " bonds and mortgages." This provision does not authorize them to loan on " notes." (3 Wend. 484.)

WAGNER, Judge, delivered the opinion of the court.

The plaintiff brought its action on a promissory note dated March 29th, 1872, made by defendants and others. Among other defenses set up, the defendant alleges that he was surety on the note, and that it was given in consideration of a loan of money, and that the plaintiff by its charter had no power to loan money upon personal security. Of this opinion was the court below, and it gave judgment for the defendant upon the pleadings.

The plaintiff was organized under the provisions of the General Statute of 1865, (p. 354, Ch. 67), which expressly authorized it to lend its surplus or unemployed money or capital on real or personal security at an interest not exceeding ten per cent. per annum. Subsequently by an act approved March 10th, 1869 (Wagn. Stat., p. 759), the legislature passed a new law relating to insurance and insurance companies, which, it is contended, repealed the power granted by the previous law and divested the company of its authority to loan its money on personal security. The 15th section of this act declares that no company formed on the joint stock plan for doing certain kinds of insurance, of which plaintiff was one, shall commence to do business with a capital of less than one hundred thousand dollars ; nor shall any company proceed to do business, if the charter of said company shall fix the capital stock at two hundred thousand dollars, or upwards, until one-half of the capital stock has been subscribed, and fifty thousand dollars thereof paid in ; or if the capital of said company named in the charter shall be less than two hundred thousand dollars, until the whole has been subscribed, and fifty thousand dollars paid in.

The 6th section provides that if upon notification it is found that the requirements in the 15th section had been complied with, the company shall be authorized to do business.

It is obvious that the foregoing sections have no application to the plaintiff. The 15th section refers entirely to companies organized under the act, and not to those organized under a previous law. Its language is purely prospective, and says, that no company shall commence to do business till certain things are

done, and then it may proceed. The companies previously formed under a prior existing law had already commenced, and this section was not designed to interfere with their organization. Indeed their corporate existence is directly saved by the 46th section.

The 23rd section applies to this as well as to all other companies, and is as follows : " It shall be the duty of the president or vice-president and secretary, or a majority of the directors of every insurance company organized under this act, or the laws of this State, annually, on the first day of January, or within thirty days thereafter, to prepare under oath, and deposit in the office of the superintendent of the insurance department, a statement made up for the last fiscal year of said company, showing, first, the amount of the capital stock of the company, if it be a joint stock company, or if it be a mutual company, the amount of the face of the premium notes held by it, and the amount thereof remaining unpaid, specifying the amount recorded as liens upon property, and the amount of guarantee fund, if the company has such fund ; second, the property or assets held by the company, specifying, 1st, the value, as near as may be, of the real estate held by the company, 2nd, the amount of cash on hand, or deposited in banks to the credit of the company, specifying in what banks the same are deposited, 3rd, the amount of cash in the hands of agents, and in the course of transmission, 4th, the amount of loans secured by bond and mortgages, or by deeds of trust, 5th, the amount of notes and bills receivable, matured and remaining unpaid, 6th, the amount of notes and bills receivable and maturing, 7th, the amount of other securities held by the company, specifying what they are, and as nearly as may be their cash value, 8th, the amount of debts considered bad, or doubtful ; third, the liabilities of the company," etc.

The 46th section provides that all such provisions of chapters sixty-seven (67) and ninety (90) of the general statutes, as relate to the business mentioned in the first section of this act, and to companies transacting such business, and all other acts and parts of acts inconsistent with the provisions of this act, are hereby repealed ; *provided*, that nothing in this act contained, shall be

construed to affect the corporate existence, or the rights as such, of any corporation now existing, heretofore organized, under any general law of this State.

This last section expressly saves the corporate existence of all companies organized previous to its adoption, and continues all the rights that they previously had. Precisely what is contemplated by, or comprehended in, the term " rights," is not very clear. In some respects it may be considered vague, and leave a good deal to implication; but by construing it in connection with the 23rd section, which defines the duties of all companies, whether organized under the act or existing previous thereto, we think the legislative will is quite apparent. In the last act nothing is said about loaning money on personal security. It is not prohibited but the law is silent on the subject. Now in the 15th section above referred to, after providing how much capital stock shall be subscribed, and what amount shall be paid in, it is declared that "the amount of capital required of companies to be paid in, shall, before such company proceed to do business, be held in cash, or invested in treasury notes and stocks of the United States, or in stocks and bonds of the State of Missouri, or in bonds and mortgages, or deeds of trust on improved unincumbered real estate, worth at least double the amount loaned thereon." That it was not intended that the fund should be invested only on bond and mortgage, or secured by deed of trust, is rendered plain by the 23rd section where it is required that the companies shall make an exhibit of the amount of their loans secured by bonds and mortgages, or by deeds of trust ; and also the amount of notes and bills receivable, matured and remaining unpaid, and the amount of notes and bills receivable and maturing. Here surely is a recognition of two modes of investing money by the companies ; first, upon real estate security, and secondly, upon personal security, taking bills receivable therefor. This shows that it was not intended to in any way interfere with the course of business pursued by companies organized under the old law. The rights that they acquired under their charter are fully recognized, but they are required, like all other companies, annually, to make a statement showing forth their true financial condition.

The result is that the judgment must be reversed and the cause remanded. The other judges concur, except Judge Vories, who is absent.